## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

**SHAWN S.,**

      **Plaintiff,**

**vs.**                                                   **CIVIL ACTION NO. 2:25-CV-00326**

**FRANK BISIGNANO,**
*Commissioner Of Social Security*,

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f, respectively. By Order entered May 19, 2025 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Motion for Judgment on the Pleadings along with his Brief in Support of Motion for Judgment on the Pleadings[1], and the Defendant's (hereinafter "Commissioner") Brief in Support of Defendant's Decision. (ECF Nos. 6, 7, 8)

---

[1] On August 6, 2025, the Plaintiff filed a ***Motion to Extend Time to File Motion for Judgment on the Pleadings and Brief in Support***, asking for a thirty-day extension to the deadline to file same on or before September 5, 2025 (ECF No. 5). However, the Plaintiff filed his Motion for Judgment on the Pleadings and Brief in Support contemporaneously thereto (ECF Nos. 6, 7) and has not filed a reply brief in this matter. Accordingly, the undersigned **DENIES** the Plaintiff's ***Motion to Extend Time*** as **MOOT**.

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for entry of an award for benefits, or alternatively, remand (ECF No. 7); **GRANT** the Commissioner's request to affirm the final decision (ECF No. 8); **AFFIRM** the final decision; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**<u>Procedural History</u>**

The Plaintiff protectively filed his applications for DIB and SSI on September 23, 2022, alleging disability since June 1, 2021 due to "cervical spondylosis, depression, cervical radiculopathy, fogginess associated with headaches, anxiety, PTSD, night terrors, a heart attack years ago, tremors, passes out, chronic neck and back pain, and tingling and numbness [in] hands" (Tr. at 17, 435). His claims were initially denied on August 10, 2023 (Tr. at 17, 75-88, 90-103) and again upon reconsideration on October 30, 2023 (Tr. at 17, 105-116, 118-129). Thereafter, he filed a written request for hearing on November 14, 2023 (Tr. at 17, 187-188).

An administrative hearing was held on February 10, 2025 before the Honorable Maria Hodges, Administrative Law Judge ("ALJ") (Tr. at 39-69). On February 14, 2025, the ALJ entered an unfavorable decision (Tr. at 14-38). Thereafter, the Plaintiff sought review by the Appeals Council of the ALJ's decision (Tr. at 349-350). The ALJ's decision became the final decision of the Commissioner on March 21, 2025 when the Appeals Council denied the Plaintiff's Request for Review (Tr. at 1-6).

On May 16, 2025, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed

a Motion for Judgment on the Pleadings along with a Brief in Support of Motion for Judgment on the Pleadings (ECF Nos. 7, 6), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 8). Consequently, this matter is fully briefed and ready for resolution.

## Plaintiff's Background

The Plaintiff was 45 years old as of the alleged onset date, and therefore considered a "younger individual" See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 29) He has a limited education, and has past relevant work as a long-haul truck driver, a medium, semi-skilled job and heavy as performed. (Id.)

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant filing for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1

to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). These Sections provides as follows:

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture

4

of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through June 30, 2025. (Tr. at 19, Finding No. 1) At the first inquiry, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since June 1, 2021, the alleged onset date. (Id., finding No. 2) At the second inquiry, the ALJ determined the Plaintiff has the following severe impairments: Hepatitis C; degenerative disc disease; right carpal tunnel syndrome; bilateral ulnar neuropathy; headaches; post-traumatic stress disorder; anxiety disorder; and drug and alcohol use disorder. (Tr. at 19-20, Finding No. 3) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 20, Finding No. 4) The ALJ then found that the Plaintiff has the residual functional capacity ("RFC") to perform light work except:

he can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally balance as defined by the SCO of the DOT. He can occasionally stoop, kneel, crouch, and never crawl. He is limited in reaching overhead to frequently. He must avoid concentrated exposure to extreme cold, wetness, and vibration. He must avoid all exposure to the hazards of moving machinery and unprotected heights. He can do no commercial driving. He can frequently handle, finger and feel. He can have occasional interaction with others. He can perform no hourly quota work, with only occasional changes in the work setting. He must avoid bright lights, like stage lights, and loud music. He needs a cane for standing and ambulation.

(Tr. at 22, Finding No. 5)

At step four, the ALJ found the Plaintiff was incapable of performing past relevant work. (Tr. at 29, Finding No. 6) However, in addition to his age, education, the immateriality of the transferability of job skills, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that the Plaintiff can perform. (Id., Finding Nos. 7-10) The ALJ also found that the Plaintiff's substance use disorder(s) is not a contributing factor material to the determination of disability. (Tr. at 30, Finding No. 11) Finally, the ALJ determined the Plaintiff has not been under a disability since June 1, 2021 through the date of the decision. (Tr. at 31, Finding No. 12)

**Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff argues that the ALJ erred in a few respects: she failed to fully develop the medical evidence as it relates to the Plaintiff's physical and mental impairments; she failed to consider the combined effect of those impairments; the ALJ substituted her own opinion for the opinions provided by the Plaintiff's treating providers; and/or the ALJ erroneously relied on those opinions provided by non-treating and partial record-reviewing state physicians. (ECF No. 6 at 18-19) The Plaintiff states that the evidence shows that he is disabled, and asks that the final decision

7

be reversed and he be awarded benefits, or alternatively, remand this matter for further proceedings so that his impairments be fully developed and a more accurate hypothetical question be asked of the vocational expert regarding his residual mental and physical functional capacity. (Id. at 19-20)

In response, the Commissioner asserts that the ALJ evaluated the entirety of the evidence appropriately, and the Plaintiff merely relies on his self-reported symptoms without identifying any gaps in the evidence the ALJ failed to consider or develop; the Plaintiff's conclusory arguments on this point has been rejected by this Court previously. (ECF No. 8 at 6-8) Additionally, the ALJ properly evaluated the Plaintiff's symptoms against the record. (Id. at 8) The Commissioner further contends that the Plaintiff fails to show how he met any specific Listing at step three, only through conclusory statements, and that the ALJ appropriately and explicitly determined that the severity of the Plaintiff's impairments, singly and in combination, did not meet or medically equal Listing criteria. (Id. at 8-11) Finally, the Commissioner states that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 11)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record pertaining to the Plaintiff's arguments and discusses it below.

Summary of Relevant Medical Evidence:

The ALJ observed that the Plaintiff has a history of cervicalgia following a motor vehicle accident in May 2021; he still complained of having pain through October 2021; and he completed ten physical therapy visits, resulting in improved mobility, though he still reported a fairly high

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

pain intensity (Tr. at 23, 531-560, 561-591, 592-595). Additionally, the ALJ noted that an x-ray of the Plaintiff's cervical spine showed mild degenerative changes without significant foraminal or spinal canal stenosis (Tr. at 24, 1019-1067). The Plaintiff had a nerve conduction study, showing median neuropathy across the right wrist consistent with mild to moderate carpal tunnel syndrome, as well as mild bilateral ulnar neuropathy across the elbows; the Plaintiff complained of numbness and tingling in his hands with no weakness; there was no evidence of cervical radiculopathy (Tr. at 24, 1139-1146; see also, Tr. at 25, 1213-1242, 1139-1146).

At the time of his motor vehicle accident, the ALJ noted that treatment records indicated the Plaintiff had passed out at the scene, and later had a headache; while a head CT scan showed no acute intracranial process, the treating provider had a low suspicion of intercranial hemorrhage or contusion, a spinal injury, a skull fracture, bony injury, intro-abdominal or intra thoracic injury (Tr. at 24, 596-604, 605-616). The ALJ further noted that the Plaintiff had been treated for headaches/migraines throughout the record, noting that the Plaintiff reported having up to two headaches per week; the Plaintiff described having light and sound sensitivity with his headaches, which were exacerbated by physical movement and emotional stress, for which he would stay in a dark room and try to sleep to relieve them (Tr. at 25-26, 958-973, 1139-1146). The ALJ also noted that head CTs have been normal throughout the medical record and that the Plaintiff takes medication for his migraines, which notably have helped somewhat (Id.).

The ALJ also noted the medical record showed that the Plaintiff had been treated for experiencing syncopal episodes since June 2022, having presented at the emergency room for an episode that occurred the previous day; the ALJ observed that treatment records showed that upon evaluation, the Plaintiff was stable, and that his dizziness and syncope had disappeared, but before

a treatment plan could be composed, the Plaintiff left against medical advice (Tr. at 24, 758-845). The ALJ acknowledged that the Plaintiff reported having five to six syncopal episodes per year, and in one such episode, he had fallen down and broke out his front teeth and eye bone; however, an EEG taken in January 2023 was normal (Tr. at 24, 974-977). In July 2023, the Plaintiff suffered another syncopal episode and was admitted to the hospital for two days: an echocardiogram was normal; a CT scan of the cervical spine showed an acute compression deformity across the anterior, superior endplate at the endplate at the L3 level with approximately 20 percent height loss anteriorly; a head CT scan was normal; and another CT scan showed a T8 compression fracture with chronic radiographic features and no acute abnormality; the Plaintiff was subsequently discharged in stable condition (Tr. at 24, 1085-1123).

Regarding the Plaintiff's back and neck pain issues, the ALJ noted that the record demonstrated that examination findings were mild, and further noted that in September 2023, the Plaintiff ambulated without a cane; though he had pain to palpation bilaterally, worse on his right side, and trigger pains in the cervical region, the Plaintiff's upper and lower extremity movements were unrestricted and not painful; he had no obvious muscle weakness or waste; the Plaintiff had full strength in both upper and lower extremities; his reflexes depressed but symmetrical; and his sensory examination was normal (Tr. at 24-25, 1139-1146, 1278-1287).

The ALJ next reviewed the consultative examination performed by Karen Jewell, APRN FNP-BC in July 2023 (Tr. at 25, 1139-1146). The report provided that the Plaintiff could remove and replace his socks and shoes; he used a cane which was prescribed; his gait was slow; Babinski's signs were negative; he could walk on his heels and toes and perform tandem gait and squat without difficulty; sensation was normal; reflexes abnormal; he had one out of four deep

tendon reflexes in the bilateral upper extremities; he was able to balance and stand on one leg; vibrations and sharp/dull differentiation were normal; tenderness was noted in the T1 area and paravertebral muscle spasms were also noted; the ALJ observed there were minimal medical records past 2023 (Id.).

The ALJ recognized that the Plaintiff had contracted Hepatitis C from drug abuse, however, the Plaintiff had been off IV drugs for longer than a year without current liver symptoms (Tr. at 25, 936-953); a July 2022 liver ultrasound was normal (Tr. at 25, 995-1010); the Plaintiff began treatment for Hepatitis C in March 2023 and he responded well and was compliant with his medication (Id.); in July 2023 a Fibro scan showed no significant fibrosis (Tr. at 25, 1068-1070).

In terms of mental health, the ALJ noted that in April 2023, the Plaintiff had a neurological test to assess his alleged memory loss, however, during examination, there were much larger than average, non-credible somatic/cognitive complaints and non-credible memory complaints, therefore, the test was considered invalid by the evaluator (Tr. at 26, 27, 1312-1242).

The ALJ also acknowledged that the Plaintiff has a lengthy history of both alcohol and hard drug abuse; he had quit both over nine years previously, and though he receives counseling and suboxone treatment, he continues to use marijuana daily (Tr. at 26, 1011-1018).

In addition, the ALJ noted that the Plaintiff had treated at Prestera Center from September to December 2022 for anxiety, post-traumatic stress disorder, and substance abuse disorder (Tr. at 26, 911-935). Examination findings showed that the Plaintiff was alert and oriented to place and time, but not the exact date; he was restless; eye contact was decreased but he was cooperative; mood was depressed and anxious and affect was constricted; reaction time was slow; intelligence was estimated at below average; insight and judgment were fair (Id.). The Plaintiff was prescribed

11

psychotropic medication; the ALJ observed there were only two exhibits with records from Prestera Center as the Plaintiff's treatment was not consistent or ongoing (Id.); additionally, the ALJ noted that the Plaintiff quit going in 2023 because he did not want to take his mental health medication with his Hepatitis C medication as he thought it would hurt his liver (Tr. at 27, 1011-1018). The ALJ also recognized that the Plaintiff treated with his primary care physician for anxiety and post-traumatic stress disorder with medication, and on examination, his mental status was deemed normal (Tr. at 26, 936-953).

Opinion Evidence and Prior Administrative Findings:

The ALJ determined the psychological opinion evidence provided by the state agency consultants unpersuasive, noting that both opined the Plaintiff had non-severe mental impairments and that both opinions were unsupported by the consultants' own notations of the objective medical evidence, which included diagnoses of severe anxiety and post-traumatic stress disorder; the ALJ further found the opinions inconsistent with the Plaintiff's treatment records (Tr. at 28, 75-88, 90-103, 105-116, 118-129, 846-910). Likewise, the ALJ found the medical opinion evidence provided by the state agency consultants unpersuasive, noting that while both opined the Plaintiff remained capable of light work, they were unsupported by the medical evidence, showing that the Plaintiff's gait was slow and his exhibited tenderness of the T1 area and paravertebral muscle spasms; further the ALJ found the opinions inconsistent with the Plaintiff's treatment records, which included injections, care from a neurologist, and physical therapy, in addition to other objective findings within the record (Tr. at 28, 75-88, 90-103, 105-116, 118-129, 1019-1067, 1139-1146). Moreover, the ALJ noted that the medical records supported the Plaintiff's need for a cane (Tr. at 28).

The ALJ then considered the opinion of Evan McClanahan, M.D., which consisted of a letter dated February 3, 2023 that indicated the Plaintiff had been under his care since July 8, 2022 and that the Plaintiff had been diagnosed with a traumatic brain injury from the motor vehicle collisions in June 2021 and November 2021 (Tr. at 28, 978). The ALJ noted that Dr. McClanahan found that the Plaintiff had issues with syncope and had lost his CDL license and therefore not recommended to drive and operate machinery, swim, or engage in other potentially dangerous activities (Id.). The ALJ found the opinion persuasive, as it is supported by the provider's own objective findings and the medical evidence; the ALJ also found it consistent with the Plaintiff's treatment records as well as other objective findings within the record  (Tr. at 28, 978, 758-845).

Finally, the ALJ found the opinion of psychologist, Kelly Robinson, M.A., provided in May 2023, persuasive, noting that her opinion that the Plaintiff could not handle his own benefits is supported by her own observations, as well as the Plaintiff's history of drug abuse, and consistent with the Plaintiff's treatment history for drug and alcohol abuse, in addition to the other objective findings throughout the record (Tr. at 29, 1011-1018, 846-910).

## The Administrative Hearing

### Plaintiff's Testimony:

The Plaintiff testified that he has a ninth grade education but later obtained his GED and has vocational training in CDL truck driving (Tr. at 43). He stated that he is unable to work because he has "passing out episodes" and that they occur on a regular basis, a couple of times a week and then he gets bad migraines (Tr. at 44-45). The Plaintiff estimated he could lift five pounds with both hands, or a gallon of milk (Tr. at 45).

The Plaintiff confirmed that he did not have surgery for carpal tunnel syndrome, or for his neck issues, but did state he had lower back surgery (Tr. at 46-47). He estimated that he could stand/walk for about fifteen minutes before needing to sit down again and could sit for about thirty minutes before he needs to stand up (Tr. at 47). Although the Plaintiff was prescribed a cane, he could not recall when, and explained that he has memory issues (Id.). He estimated that he could walk a block or so before needing to stop (Tr. at 62).

Because of a "real bad head injury", the Plaintiff testified that he gets confused easily (Tr. at 48).

The Plaintiff testified that he was receiving treatment for his migraines, but had moved to Texas for the warmer weather, and was attempting to get his medical card there, but then returned and had not yet received any further treatment for this condition, as he has not yet obtained his medical card here (Id.). He does not know what triggers his headaches, although noise and bright light sometimes caused them, and he estimated he gets one or two migraines a week, lasting a day, day and a half, and sometimes longer (Tr. at 48, 58). For relief, the Plaintiff testified that he go into a dark place and keep his eyes shut, and try to relax and deal with the pain (Tr. at 48-49). When he did receive treatment for his headaches/migraines, the Plaintiff testified that it did not really help (Tr. at 49).

Regarding his Hepatitis C, the Plaintiff testified that he had been receiving infusions for treatment, but not anymore; he did not know how this condition impacts his ability to function day to day (Id.).

The Plaintiff testified that his PTSD and anxiety impacts his ability to go to stores, because he starts to feel real panicky, forgets what he needed, and gets confused and will just leave (Id.).

14

He does not belong to any social groups, and does not get along with others, and tries to stay at home (Tr. at 50).

The Plaintiff testified that his sleep is sometimes okay, and sometimes not, there is no real consistency with his sleep patterns (Id.). Because he lost his medical card, he has been unable to get medication to help with his sleep (Tr. at 50-51). He wakes up several times during the night due to pain (Tr. at 59).

The Plaintiff testified that he lives alone, but he receives help from his daughter and son-in-law; they get him groceries, his daughter does house chores, including the Plaintiff's laundry (Tr. at 51). He makes himself microwave meals, or a bowl of cereal (Id.).

To pass the time, the Plaintiff stated that he has a dog and watches TV, but he cannot remember what he watches after a show is over (Tr. at 52).

The Plaintiff testified that he suffered a heart attack, but did not recall when, except it had been "some years back" and that he had COPD and emphysema (Tr. at 52-53). The Plaintiff testified that he had not drank alcohol or used opioids in sixteen and twelve years, respectively, and when he had his medical card, he was on Suboxone for treatment (Tr. at 53). The Plaintiff denied his passing out episodes were due to alcohol or drugs, but as a result of his traumatic brain injury (Tr. at 53-54).

The Plaintiff testified that he has depression, which causes him to have "rambling thoughts" in his head, mostly about his past, and the tragic death of his grandmother, who raised him (Tr. at 54).

Although he still has a license, the Plaintiff testified that he tries not to drive, because he is afraid of passing out; he stated he passed out a week previously and hurt his rib (Id.).

15

The Plaintiff confirmed that he had been in a motor vehicle accident in 2021 and injured his right shoulder; he has trouble reaching with his right arm and can "not really" reach overhead (Tr. at 55).

Regarding his back and neck issues, the Plaintiff testified that he was given injections, but they did not help at all (Id.). He uses heating pads and cold, and a TENS-unit to alleviate his pain, and his daughter bought him a vibrating bed, which seems to help a little bit, especially with his breathing (Tr. at 55-56, 58). The Plaintiff testified that he has pain when sitting, lying down, and when standing or sitting for long periods, his pain increases (Tr. at 60). The Plaintiff stated that his pain distracts him and he is bothered by people around him when he is experiencing pain (Id.). His neck pain radiates down into his arms and hands and his low back pain radiates into his right leg and hip (Id.).

In terms of his anxiety, the Plaintiff also experiences fatigue, where he has no motivation to do anything; he also gets "the shakes real bad" and "sweats", which also affects his ability to concentrate, and makes him very irritable (Tr. at 60-61). In addition, his ability to understand and remember things, or to be around people, are affected (Tr. at 61).

Vocational Expert's Testimony:

The vocational expert testified that the Plaintiff's past relevant work is classified as medium, semi-skilled work, but as the Plaintiff performed it, heavy (Tr. at 63). Under the controlling RFC, *supra*, the vocational expert opined that a hypothetical with the Plaintiff's profile would be unable to perform the Plaintiff's past relevant work, but can perform other unskilled positions in the national economy: price marker; router; or tag inserter (Tr. at 63-64). The vocational expert stated that should the individual require a cane for ambulation, it would have no

16

impact on the aforementioned jobs; however, if the individual needed the cane for both ambulation and standing, it would eliminate all jobs identified (Tr. at 64). Instead, the individual could perform sedentary work, including the jobs such as a leaf tier, final assembler, and waxer, each unskilled (Id.).

In response to questioning by the Plaintiff's attorney, the vocational expert opined that if the hypothetical individual were limited to lifting five, six, or seven pounds with either or both hands, all jobs would be precluded (Tr. at 65). If the individual were limited to standing only fifteen to twenty minutes at a time, then light work would be precluded (Tr. at 66). If the individual would need a break from sitting after each hour, that would preclude sedentary work (Tr. at 66-67). Finally, if the individual had difficulty concentrating, remembering, and applying information and could not perform simple, routine work, then such an individual could not perform the sedentary jobs identified, or the price marker or router positions identified at the light exertional level (Tr. at 67).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claims is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As noted *supra*, the Plaintiff argues that the ALJ failed in her duty to develop the record with respect to several alleged impairments[3], failed to consider the combined effect of both his physical and mental impairments; and also failed to consider the medical records provided by longtime treating physicians and substituted her opinion for those of the Plaintiff's treating physicians. (ECF No. 6 at 14-19)

To the extent that the Plaintiff has argued that the ALJ "failed to consider" the medical records of his treating physicians[4], the undersigned **FINDS** this argument wholly without merit: throughout the written decision, the ALJ made repeated citations to the medical records of the

---

[3] The Plaintiff specified that the following impairments preclude his ability to engage in substantial gainful activity: cervical spondylosis; cervical hyperlordosis; cervical radiculopathy; cervical paraspinal muscle spasms; cervical sprain; memory issues; suicidal ideation; fogginess associated with headaches; heart attack years ago; tremors; traumatic brain injury with persistent deficit; syncope episodes; lower back surgery; compression fracture L3 vertebra; and chronic back pain. (ECF No. 6 at 14)

[4] The Plaintiff names the following providers: Pramod Kumar, M.D., St. Mary's Pain Relief; Dr. Nicholas Phan, of Marshall Health Neurosurgeon; Beth Kearns, BSW, of Prestera; Marie Casne, NP, of Prestera; Kevin Bishop, NP, Marshall Health; David Rupp, M.D., Marshall Health; Evan McClanahan, M.D., Marshall Health; Michel Saver, M.D., Marshall Health; and Kasey Stickler, M.D., Marshall Health.

Plaintiff's longtime treating providers (Tr. at 20-29). Notably, the Plaintiff does not identify any medical records the ALJ failed to consider, but merely identifies random providers. While the ALJ did not specifically identify the *names* of the individual providers in her discussion of the evidence, it is clear that she did consider this evidence, as summarized *supra*. As for the Plaintiff's argument that the ALJ "substituted" her own opinion for those of his treating physicians, the undersigned **FINDS** this argument completely baseless: for starters, **ONLY ONE** of the providers identified by the Plaintiff in his opening brief has a "medical opinion" in evidence as defined under 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Additionally, as discussed *supra*, the ALJ explicitly addressed the opinion provided by Evan McClanahan, M.D. (Tr. at 28, 978) Moreover, the Plaintiff offers nothing in support of his argument that the ALJ "substituted" her own opinion, let alone identify what that may have been, save for a conclusory statement.[5] [6]

The Duty to Develop the Evidence:

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted

---

[5] As an additional matter, the Plaintiff also makes a conclusory argument that the ALJ improperly relied upon "non-treating and partial record-reviewing state physicians" (ECF No. 6 at 19). As discussed *supra*, this is totally inaccurate: the ALJ herein found the state agency consultant opinions not persuasive, and even found the Plaintiff's own treating provider's opinion persuasive. (Tr. at 28)

[6] This Court has recognized that the broad reference to nearly the entire medical record without asserting any specific challenge to the ALJ's consideration of the evidence does not carry any weight on appeal. See, e.g., *Williams v. Saul*, No. 3:18-cv-01282, 2019 WL 3756392, at *13 (S.D.W. Va. July 17, 2019), *report and recommendation adopted*, 2019 WL 3759805 (S.D.W. Va. Aug. 7, 2019) ("Claimant does not identify any error in the ALJ's consideration of the medical opinions, and her generalization that the ALJ failed to consider the opinions, without any reference to any specific error by the ALJ, fails to carry any weight.").

by the claimant when that evidence is inadequate." Id. The court explained that the ALJ's failure

to ask further questions and to demand the production of further evidence about the claimant's

arthritis claim in order to determine if it met the requirements in the listings of impairments

amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is the Plaintiff's responsibility to prove to the Commissioner that he is

disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are

blind or disabled. You must inform us about or submit all evidence known to you that relates to

whether or not you are blind or disabled." Thus, the Plaintiff is responsible for providing medical

evidence to the Commissioner showing that he has an impairment, further, the Regulations are

clear that this responsibility is ongoing at each level of the administrative review process. Id. The

Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof
> in disability proceedings. It is true . . . that the Secretary bears the burden of proof
> at step five . . . [b]ut the Secretary is required to bear this burden only if the
> sequential evaluation process proceeds to the fifth step. The claimant first must
> bear the burden . . . of showing that . . . he has a medically severe impairment or
> combination of impairments . . . . If the process ends at step two, the burden of
> proof never shifts to the Secretary. . . . It is not unreasonable to require the
> claimant, who is in a better position to provide information about his own medical
> condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act

as the Plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-831 (8th Cir. 1994). In this case, the

Plaintiff was represented by counsel and the ALJ has the right to assume that his counsel was

presenting the strongest case for benefits. See Laney v. Astrue, 2011 WL 11889, at *11 (S.D.W.

Va. Jan. 4, 2011) (Eifert, M.J.) (citing Nichols v. Astrue, 2009 WL 2512417, at *4 (7th Cir. 2009).

An ALJ's duty to develop the record does not require him to make specific inquiries into the Plaintiff's treatment modalities or search for cumulative evidence; his duty is to obtain sufficient evidence upon which he can render an informed decision. Id. (internal citations omitted).

The Plaintiff bears the burden of establishing a *prima facie* entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, the Plaintiff "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

With respect to the Plaintiff's assertion that the ALJ failed to develop the evidence concerning his numerous impairments (See footnote 2, *supra*), it is noted that the Plaintiff neither specifies what evidence was inadequately fleshed out by the ALJ, nor what evidence specifically supports his argument that he is disabled. As pointed out by the Commissioner (ECF No. 8 at 6-7), this Court has repeatedly rejected such arguments:

> [Plaintiff] does not identify any gaps in the record or further evidence that the ALJ should have developed. []He cites a legal standard and does not articulate how it applies to h[is] case. [Plaintiff's] conclusory assertion that the ALJ failed to develop the record does not assert a viable challenge to the Commissioner's decision. Indeed, the Court should not be tasked with researching and constructing [Plaintiff's] arguments for h[im]. [Plaintiff] fails to specify any deficiencies in the record . . . [Plaintiff] does not identify any further inquiries that the ALJ should have made or indicate what further evidence was necessary for the ALJ to render a decision on h[is] disability applications. [Plaintiff] lists pieces of medical evidence in h[is] brief, yet []he does not explain how any of it prompted further investigation.

*Hensley v. Kijakazi*, No. 3:21-CV-00178, 2021 WL 5871542, at *13-14 (S.D. W. Va. Nov. 23, 2021), *report and recommendation adopted*, No. 3:21-cv-00178, 2021 WL 5867126 (S.D. W. Va. Dec. 10, 2021); *see also Jason L. v. O'Malley*, No. 3:23-cv-00307, 2024 WL 1152405, at *11

(S.D. W. Va. Feb. 29, 2024), *report and recommendation adopted*, No. 3:23-cv-00307, 2024 WL 1149282 (S.D. W. Va. Mar. 15, 2024) (quoting *Hensley*); see also, *Ray H. v. Dudek*, No. 3:24-cv-00705, 2025 WL 1214556, at *9 (S.D.W. Va. Apr. 9, 2025), *report and recommendation adopted sub nom.*, 2025 WL 1210703 (S.D.W. Va. Apr. 25, 2025).

The undersigned also notes that this Circuit has long recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" <u>Reid v. Comm'r of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014) (quoting <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)); <u>see also</u> *Call v. Berryhill*, No. 2:17-cv-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018). To the extent that the Plaintiff complains that the ALJ may not have specifically mentioned each of his alleged impairments[7], he stated that he considered all the evidence of record. (<u>See</u> Tr. at 17, 27 ("After careful consideration of all the evidence. . ."); Tr. at 19, 24 ("After careful consideration of the entire record. . ."). Having so stated, this court should "take [him] at [his] word." <u>Reid</u>, 769 F.3d at 865 ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."); <u>see also</u> <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); <u>Christina W. v. Saul</u>, No. 4:19-cv-00028-PK, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019)("Plaintiff further argues that the ALJ erred in not explicitly discussing various pieces of evidence, particularly the fact that she

---

[7] Though the Plaintiff does not identify or specify any one impairment that the ALJ failed to mention or consider, it appears that the ALJ took great pains to mention each of the Plaintiff's alleged impairments and considered the symptoms related thereto and how they affected the Plaintiff's overall functioning in her review of the medical and other evidence of record in both the RFC assessment, and at prior steps in the sequential evaluation process.

is participating in a structured treatment program. While the ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word."). Moreover, despite the Plaintiff's listing the various diagnoses and symptoms related thereto in his brief, this is not the litmus test for disability, as it is also well known that diagnoses alone do not establish disability, because there must be a showing of related functional loss. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (*per curiam*) (internal citations omitted).

Nevertheless, despite the Plaintiff's assertion otherwise, the ALJ considered the medical evidence (and opinions) from the treating and examining sources of record. In addition, the ALJ also expressly considered the Plaintiff's and the vocational expert's testimonies (see, e.g., Tr. at 23, 24, 25, 26, 30). Indeed, when asked by the ALJ at the beginning of the hearing if there was a complete record in this case, the Plaintiff's attorney responded in the affirmative. (Tr. at 42; see also, Tr. at 17 ("The claimant submitted or informed the [ALJ] about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a) and 416.1435(a))." In short, the Plaintiff has failed to demonstrate any paucity in the evidence that would have warranted further development of the record.

Accordingly, the undersigned **FINDS** that the Plaintiff's contention that the ALJ erred by failing to develop the record is without merit.

<u>Consideration of the Combined Effect of Impairments:</u>

The Regulations provide:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your

impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

See 20 C.F.R. §§ 404.1523(c), 416.923(c). When confronted with a combination of impairments, an adjudicator must not only acknowledge "the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The Fourth Circuit has held that the ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. In short, the ALJ must analyze the cumulative or synergistic effect that the various impairments have on the Plaintiff's ability to work. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

"The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." See 20 C.F.R. §§ 404.1525(a), 416.925(a); Sullivan v. Zebley, 493 U.S. 521, 532 (1990). To qualify for benefits, the Plaintiff must show that his combination of impairments is "equivalent" to a listed impairment, and he "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." See Id. at 531.  A claimant must meet all, not just some, of the criteria for a listing to apply. Id. at 530.

In a conclusory fashion, the Plaintiff asserts that the medical evidence confirms that the combined effect of his severe physical and mental impairments renders him totally disabled. (ECF No. 6 at 18) Again, as pointed out by the Commissioner, the Plaintiff does not specify which

24

impairment would individually warrant a disability finding, instead, he merely states that the ALJ failed to consider the medical evidence from his "longtime treating physicians" (Id. at 18-19) – this Court has rejected such arguments previously. See, *Adkins v. Colvin*, No. 3:14-27920, 2016 WL 854106, at *9 (S.D. W. Va. Feb. 11, 2016), *report and recommendation adopted by* 2016 WL 868342 (S.D. W. Va. Mar. 4, 2016) (affirming where the claimant failed to identify the listing he allegedly met in combination); *Raines v. Kijakazi*, No. 3:21- 0045, 2021 WL 4258733, at *12 (S.D. W. Va. Aug. 27, 2021), *report and recommendation adopted by* 2021 WL 4255625 (S.D. W. Va. Sept. 17, 2021) (affirming where the claimant did not specify what evidence was "inadequately fleshed out" in evaluating her impairments in combination, nor what evidence "specifically supports" *per se* disability); *Ray H.*, 2025 WL 1214556, at *11-13; *Jason L.*, 2024 WL 1152405, at *13-14 (rejecting the same argument regarding the Listing of Impairments).

As noted *supra*, at step three, the ALJ found that none of the Plaintiff's severe impairments, even their combined effects, met Listing requirements at the third step of the sequential evaluation process (Tr. at 20-21): the ALJ observed that in reference to Listing 5.05 regarding the Plaintiff's Hepatitis C, the record of evidence did not support a finding that this impairment met the Listing requirements; the ALJ noted the evidence of record did not support a finding that the Plaintiff's degenerative disc disease met the criteria under Listings 1.15 or 1.16; the Plaintiff's carpal tunnel syndrome, neuropathy, and bilateral ulnar neuropathy all failed to meet or medically equal Listing 11.14; and the Plaintiff's headaches did not occur with the severity or frequency to satisfy the requirements of any Listing, particularly 11.02. The ALJ referred to the relevant medical evidence that supported these findings. (Tr. at 20-21, 596-604, 978, 979-994, 995-1010, 1019-1067, 1068-1070, 1124-1138, 1139-1146, 1278-1287)

The ALJ also examined the evidence relating to the Plaintiff's mental impairments, finding that they too, failed to meet Listing requirements (Tr. at 21-22): while the ALJ determined the evidence supported findings that the Plaintiff's mental impairments caused moderate limitations in the broad areas of functioning, including interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself, the ALJ found he had no limitations in understanding, remembering or applying information. The ALJ discussed the relevant medical and other evidence of record that supported these findings, including treatment records, the psychological evaluation, and the Plaintiff's Function Report from December 2022 (Tr. at 21-22, 470-478, 1011-1018, 1243-1277).

To the extent that the Plaintiff takes issue with the ALJ's evaluation of his subjective complaints, it is noted that recently the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion

26

of that evidence which did not support such a conclusion. Id. Essentially, the Fourth Circuit has once again cautioned against an ALJ's analysis must not primarily rely upon the lack of objective medical evidence as the reason for discounting a claimant's complaints. As demonstrated by the foregoing, this did not occur here: the ALJ did not select only those portions from the objective medical evidence that failed to support the Plaintiff's allegations of disabling impairments. The ALJ also examined both aggravating and mitigating factors with respect to the Plaintiff's subjective complaints which included his testimony, his reports to providers, the objective medical evidence, as well as the opinion evidence. The law does not require one to be pain-free or experience no discomfort in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1996). In this case, the ALJ provided a thorough and adequate analysis of the Plaintiff's subjective complaints that complied with the pertinent Regulations and case law – it is notable that the gravitas behind the ALJ's evaluation of the Plaintiff's subjective complaints was not over-reliance on the objective medical record, but with the Plaintiff's own inconsistent statements. (See, e.g., Tr. at 20; "[The Plaintiff] further alleged disability due to chronic obstructive pulmonary disorder. However, there was no diagnosis or treatment for this condition in the record. His lung examinations were normal.")

Clearly, the ALJ considered the medical evidence as well as the Plaintiff's reported symptomology from the period at issue. As discussed *supra*, the ALJ did consider this evidence in making his third step determination (as well as the second step determination and in the subsequent steps in the sequential evaluation process), thus, to the extent that the Plaintiff argues that the ALJ failed to consider and evaluate the combined effects of his impairments, the undersigned **FINDS** this argument lacks merit. Additionally, the undersigned **FINDS** that the ALJ's subjective

symptoms analysis complied with the pertinent Regulations and controlling case law and is based upon substantial evidence. The undersigned further **FINDS** the ALJ's discussion of the objective and other evidence of record in his evaluation of the Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms, and that the ALJ's conclusion that the Plaintiff's statements were inconsistent with the evidence of record complied with the applicable law, is also supported by substantial evidence.

Although the Plaintiff advocates for a different outcome, such are matters that involve resolving the conflicting evidence of record, which is an evidentiary finding within the purview of the ALJ. In short, though the Plaintiff may disagree with the ALJ's determination that he is not disabled, this Court cannot re-weigh this conflicting evidence or substitute its judgment for the Commissioner's. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also, SSR 96-8p, 1996 WL 3741784, at *7. The ALJ's narrative of the record included the objective medical evidence, including imaging, and clinical examination findings, as well as the other evidence of record, including but not limited to the Plaintiff's own statements and testimony; the ALJ's thorough discussion of all this evidence, and her ultimate determination that the Plaintiff remained capable of light work with certain restrictions during the period at issue despite his subjective complaints, provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at his conclusions" therefore remand is not necessary. Id. at 637.

Accordingly, the undersigned **FINDS** that the Commissioner's final decision determining that the Plaintiff is not disabled from June 1, 2021 through the date of the decision is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7), **GRANT** the Commissioner's request to affirm the decision below (ECF No. 8), **AFFIRM** the final decision, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of

such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: September 22, 2025.



Omar J. Aboulhosn
United States Magistrate Judge